# UTAH ASSOCIATION OF CREDIT MEN v. BOYLE FURNITURE CO.

No. 2432.   Decided November 17, 1913 (136 Pac. 572).

1. PLEADING—PREFERENCES—ACTIONS TO RECOVER—ALLEGATIONS OF COMPLAINT—CONCLUSIONS. An allegation of the complaint, in an action to recover a preference under the federal Bankruptcy Act (Act July 1, 1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), that the effect of the transfer was to enable

defendant to obtain a greater percentage of his debts than any of the other creditors of the same class, was not objectionable as a conclusion of law; having substantially followed the language of the bankruptcy act. (Page 526.)

2. BANKRUPTCY—RECOVERY OF PREFERENCES—"INSOLVENT." A person is deemed "insolvent" whenever the aggregate of his property, exclusive of that which may be conveyed, concealed, or removed with intent to defraud creditors, and all property exempt to him under state laws, shall not at a fair valuation be sufficient to pay his debts. (Page 527.)

3. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE. Any error, in an action to recover preferences under the federal Bankruptcy Act (Act July 1, 1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), in admitting in evidence schedules filed in the bankruptcy proceedings as evidence of the bankrupt's assets and liabilities, was not prejudicial to defendant, where they were not considered by the appellate court on the question of insolvency, and the trial court's finding thereon is sustained. (Page 529.)

4. APPEAL AND ERROR—LAW OF CASE—RULING ON FORMER APPEAL. A ruling as to the admissibility of evidence made on a former appeal is the law of the case on a second appeal. (Page 529.)

5. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE. Any error in admitting in evidence, in an action to recover preferences under the bankruptcy law, the schedules filed by the bankrupt as evidence of his assets and liabilities, was not injurious to defendant so far as the statements therein were confirmed by the bankrupt's testimony for defendant at the trial. (Page 529.)

6. WITNESSES—IMPEACHMENT—CONTRADICTORY STATEMENTS. In an action to recover a preference given by an insolvent contrary to the Bankruptcy Act (Act July 1, 1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), the schedules of assets and liabilities filed in the bankruptcy proceedings are admissible in evidence on the issue of insolvency, to contradict evidence for defendant given by the bankrupt; his attention having been first called to the conflict. (Page 529.)

7. TRIAL—INSTRUCTIONS—CONSTRUCTION. Instructions should be considered together. (Page 530.)

8. BANKRUPTCY—PREFERENCES. Where the inevitable result of a transaction between a debtor and creditor is to create a preference, it is presumed that the creditor as well as the debtor intended to bring about that result. (Page 530.)

9. BANKRUPTCY—PURPOSE OF BANKRUPTCY LAW. The object of the bankruptcy law is to enforce equality among the bankrupt's creditors. (Page 531.)

10. BANKRUPTCY—PREFERENCES—NOTICE OF INSOLVENCY. One of the officers of defendant corporation, which received a part of a bankrupt's stock of goods originally purchased from it, inspected the stock before it was transferred and was told the amount of the bankrupt's unsecured liabilities, and that there were mortgages amounting to a certain sum on the real estate, and could have ascertained the exact condition of such real estate from the county records, which would have shown that the bankrupt had conveyed all of his interest in the realty subject to the mortgages thereon. *Held*, that a finding was authorized that defendant's officer had or could have had full information concerning the bankrupt's insolvent condition. (Page 531.)

11. BANKRUPTCY—PREFERENCES—EVIDENCE—SIMILAR TRANSACTIONS. In a suit to recover an alleged preference consisting of a return of purchased merchandise to the seller while insolvent, evidence that on previous occasions the bankrupt had returned merchandise to defendant and received credit therefor was not admissible. (Page 532.)

12. BANKRUPTCY—PREFERENCES—INTEREST. Upon recovering a preference made contrary to the federal Bankruptcy Act (Act July 1, 1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), interest should be allowed from the time a demand is made upon defendant for the return of the preference, and, if no formal demand is made, from the time suit is instituted to recover the property; the commencement of the action constituting a demand. (Page 532.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Utah Association of Credit Men against Boyle Furniture Co.

Judgment for plaintiff. Defendant appeals.

AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.

*Halverson & Pratt* for appellant.

*Stephens, Smith & Porter* for respondent.

FRICK, J.

This action was brought under the federal Bankruptcy Act (Act July 1, 1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) to recover an alleged preference. This is the second appeal. See 39 Utah, 518, 117 Pac. 800, for first appeal. This appeal was argued and submitted during the February, 1913 term. An opinion affirming the judgment was handed down before the commencement of the May term of that year, but pending the latter term appellant's counsel filed a petition for a rehearing, which was granted, and the judgment of affirmance was set aside, and the case was again thrown at large. During the present October term the case was again argued by both sides and resubmitted. We have again carefully gone over the evidence and considered the arguments of counsel, and this opinion is substituted for the former one and will be the only one published in this case.

The first contention made by counsel for appellant is that the complaint is deficient in substance, and hence does not support the verdict and judgment rendered and entered against the appellant. In this connection it is contended that the allegation that "the effect of said transfer was to enable the said defendant (appellant) to obtain a greater percentage of his debt than any of the other creditors of said W. B. Jensen (the bankrupt) of the same class" is a mere conclusion of law, and hence leaves the complaint in this case as if no allegation upon that subject had been made. In making the foregoing statement in the complaint the pleader substantially followed the language of the Bankruptcy Act. It has repeatedly been held by the courts that, among other things, it is essential to allege in the complaint that the transfer or payment complained of will have the effect of giving the creditor to whom it is made a greater percentage of his claim out of the bankrupt's estate than other creditors of the same class will obtain. The only question is whether an allegation substantially in the language of the statute is sufficient. This question was squarely presented for decision in *Crooks v. People's Nat. Bank*, 46 App. Div.

335, 61 N. Y. Supp. 604, 3 Am. Bankr. Rep. 243, and it was there held that the statement aforesaid is not a statement of a legal conclusion, but that it "is an allegation of a resultant fact, and it is such facts and not evidentiary facts that are to be alleged in a pleading." The allegation substantially in the language of the statute was accordingly held to be sufficient. The subsequent cases of *Schreyer v. Citizens' Nat. Bank,* 74 App. Div. 478, 77 N. Y. Supp. 494, and *West v. Bank of Lahoma,* 16 Am. Bankr. Rep. 733, 16 Okl. 328, 85 Pac. 469, merely make it clearer that the rule as laid down in *Crooks v. People's Nat. Bank, supra,* is the proper one. Counsel for appellant have cited no case in support of their contention. We are of the opinion that upon principle, and according to the rules of pleading, the allegation is sufficient; and hence this objection is not tenable.

It is further contended that no demand for the goods which are the subject of the action was proved. In view of appellant's claim and contentions it was not necessary to prove a demand. It is manifest from the record that if a demand had been made it would have been refused by appellant. The law does not require a demand to be made when it is clear that it would have been useless to make it. (1 Cyc. 698; *Kimball v. Farmers' & Mechanics' Bank,* 50 Wash. 610, 97 Pac. 748; *Coreland v. Kilpatrick,* 38 Colo. 208, 88 Pac. 472.)

One of the principal reasons assigned in the petition for a rehearing why a rehearing should be granted was that we had erred in holding that there was not sufficient evidence of the bankrupt's solvency to require a submission of that question to the jury. In Loveland on Bankruptcy (3d Ed.) 186, in referring to what constitutes insolvency the author says:

"A person is deemed insolvent whenever the aggregate of his property exclusive of any property which may be conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

In the foregoing statement must be included all property that may be exempt to the bankrupt under the state laws. At the last hearing we took special pains to have counsel for appellant point out to us all of the property, either exempt or otherwise, which they claimed was owned by the bankrupt at the time the transfer in question was made. We have again carefully gone over the whole list of the property claimed by counsel and the valuation put upon it by them, and, without going into details or setting forth the several items, we are more firmly convinced than ever that under no possible view of the evidence could a jury of reasonable men have found that the bankrupt's property, taken at a fair valuation at the time of the transfer, was sufficient to pay his debts which were undisputed. Indeed, from a consideration of the evidence most favorable to appellant, all reasonable minds must arrive at but one conclusion, and that is that the whole of the bankrupt's property would have fallen far short of paying the admitted claims against him. In making the foregoing statement we desire to say that we do not do so with the intention of reflecting upon the sincerity of counsel or upon their good faith in making their contention, but we make it because we are fully convinced that there is not sufficient evidence in the record from which a jury could find that the bankrupt was solvent at the time of the transfer. In view that after a second argument we are all convinced of the correctness of the foregoing statement, we shall refrain from setting forth the evidence or any part of it here. The only purpose that could be subserved in doing so would be to show from the evidence itself that our conclusions are justified. Where, as in this case, we are thoroughly convinced that but one result is permissible, we must determine what the result shall be. Where counsel and this court disagree, we must assume the responsibility of deciding who shall prevail. We therefore adhere to our former conclusion that the district court committed no error in determining as a question of law that the bankrupt was insolvent at the time of the transfer.

It is again contended, as it was on the former appeal, that the bankrupt and his wife owned certain real property as co-partners, and that although the title to the same was held in the name of the wife alone the bankrupt nevertheless had an interest therein. We fully considered that question on the first appeal, and there held that there was not sufficient evidence to justify a finding that the relation of business partners existed between the bankrupt and his wife at any time. The evidence upon that subject was even more meager on the last trial than it was on the former. In view of that fact, and for the reasons stated in the former opinion handed down on the first appeal, we adhere to the ruling there made.

It is next contended that the court erred in admitting in evidence the schedules filed by the bankrupt in the bankruptcy proceedings as evidence of his assets and liabilities. We left these schedules out of consideration in arriving at our conclusions, and hence, if any error has been committed by the trial court in that regard, it is error without prejudice. Apart from this, however, the weight of authority clearly supports the ruling of the district **3, 4, 5, 6** court and the rule laid down by us in the former opinion, which, in any event, is the law of this case. But in no event could appellant have been prejudiced by the introduction of the schedules on the last trial, for the reason that the statements therein contained were, to say the least, declarations of the bankrupt, who was a witness for the appellant at the trial. This much he conceded. His testimony on the trial in some respects confirmed the statements contained in the schedules, and in others it was in conflict therewith. So far as the statements were confirmatory their admission could not have injured the appellant, and so far as they were in conflict the respondent had a right to show such conflict after directing the bankrupt's attention thereto.

It is further strenuously insisted that the court erred in charging the jury with respect to the question of appellant's intention to receive a preference by the transfer of the property to it. While the district court perhaps might have chos-

43 Utah—34

en language which would have been clearer and bet-
ter adapted to inform the jury upon that question,   **7, 8**
yet we are of the opinion that when all the instruc-
tions are considered together, as they must be, the charge as a
whole could not have misled the jury. In instruction No. 4-
the court specifically informed the jury what respondent was-
required to prove in order to recover. No exception was taken
to that instruction and no fault is found therewith.   Coun--
sel, however, contend that the court charged the jury that a
specific intent to make and receive a preference need not be·
proved, and that this constituted error. In this connection
it is insisted that under the law in force when the transfer·
in question occurred a specific intent to give and receive a
preference was necessary.   The court gave two instructions·
relating to that subject.   Those two instructions must be·
considered together, as no doubt the jury considered them..
If both are so considered, we are of the opinion that the ap-
pellant has no cause for complaint.   The court did not
charge the jury that an intent to prefer was not necessary;·
but what the court in effect told the jury was that it was not
necessary to prove such an intent by direct evidence, and
that from certain circumstances, if found to exist, the intent
might be presumed.   The court, in charging the jury upon
this subject, evidently attempted to follow the law as laid
down by the United States Circuit Court of Appeals of the·
Sixth circuit in the recent case of *Kimmerle v. Farr,* 189
Fed. 300, 111 C. C. A. 32.   In that case, after holding that
the intent to prefer must be shown, it is said:

"The intention to give a preference may be shown not merely
by proof of actual intent, but by its equivalent in law—that is, by
proof that the necessary result of the transaction was to create a
preference—in which case the intention to give a preference will
be presumed.   Where the inevitable result of a transaction between
a debtor and a creditor is to create a preference, the law will con-
clusively impute to the debtor the intention to bring about the·
result necessarily arising from the nature of the act which he does."

What is to be presumed with regard to the debtor, where
the circumstances governing them are the same, must also be·

presumed with respect to his creditor. The district court, in the instruction criticised, in effect told the jury just what is contained in the foregoing quotation, but did so in different language.

The object of the bankruptcy law is to enforce equality among the bankrupt's creditors. That such is the case is clearly stated in *Re Blount* (D. C.) 142 Fed. 263, in the following words:

"The main object of the Bankruptcy Act is to secure an equal distribution of the assets of an insolvent among all his creditors and prevent preferences. And it is the duty of the courts to carry this purpose into effect to the extent which the language of the act justifies. Schemes and artifices to evade the letter and spirit of the law will not be tolerated."

See, also, *In re John J. Coffey*, 19 Am. Bankr. Rep. 148.

The facts in this case are beyond dispute that one of the officers of the appellant corporation personally inspected the stock of merchandise the bankrupt had on hand and was told the amount of the bankrupt's unsecured liabilities at the same time, or about the time the transfer in question was made. He was also told that there were mortgages amounting to at least $2600 on the real estate. This officer was therefore charged with notice that the real estate was incumbered, and if he had either sent some one to inspect the county records or had taken the trouble to go the distance of a few blocks to inspect them himself he would have ascertained all about the condition of the real estate. He would have found that the bankrupt owned no interest in the real estate, but that he had conveyed it all subject to the mortgages upon it; that is, that the purchaser had agreed to pay the mortgages to the extent of $2000. The jury on that branch of the case were fully justified in finding from the evidence that the officer in question had full information, or was apprised of sufficient circumstances which if followed up would impart to him full information, concerning the bankrupt's insolvent condition. Moreover, from the overwhelming weight of testimony coming from disinterested witnesses the jury were not only justified in finding, but

were almost compelled to find, that appellant had received from the bankrupt about all of the salable or desirable goods he had in stock. The evidence is all but conclusive that after appellant had removed the furniture transferred to it there was not sufficient left in the bankrupt's store to continue in business, and in fact he discontinued it within a very few days thereafter. When the fact that the bankrupt was heavily indebted to others for goods purchased by him is kept in mind, and that all this was known to appellant's officers, the conclusion is unavoidable that both the bankrupt as well as the appellant's officers intended that appellant should be protected regardless of whether the other creditors received payment for their claims or not. The jury, therefore, could have arrived at but one conclusion, namely, that a preference was intended by the transfer in question.

It is also contended that the court erred in refusing to allow appellant to prove that it had on other occasions taken goods back from the bankrupt and had given him credit therefor. The district court in that regard simply followed our decision on the former appeal, and, although counsel have assailed the correctness of that decision and have cited several cases which they claim hold to the contrary, we, after carefully examining those cases, are of the opinion that they are not in point. Moreover, we can see no good reason why the rule laid down in the former opinion is not the right one. We are of the opinion that it is the right one, and it is therefore adhered to, not only because it is the law of this case, but because in our opinion no other rule would be permissible under the circumstances disclosed by this record.

Complaint is also made that the court erred in charging the jury with respect to the allowance of interest. Counsel for appellant devoted just six lines in their printed brief to this question, and perhaps for that reason the matter was inadvertently overlooked in our former opinion, and that fact was one of the reasons which induced us to grant a rehearing. The court charged the jury that if they found for the plaintiff they should allow interest.

on the amount found by them to be owing by appellant at the rate of 8 per cent. per annum from the date of the transfer of the property, which was conceded to have taken place on February 14, 1909. Counsel contend that interest should be allowed only from the time a demand is made for the restoration of the goods, and, as in this case no demand was shown, interest should have been allowed only from the commencement of the action. In the case of *Kaufman v. Tredway*, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190, it is held that interest should be allowed at least from the date the action was commenced. It is not determined in that case, however, whether or not interest might be recovered for a period anterior to the commencement of the action. In *Ommen v. Talcott* (D. C.) 175 Fed. 261, it is held that interest is recoverable from the date on which the goods that were transferred as a preference were sold by the transferee. In Collier on Bankruptcy (9th Ed.) 827, it is said:

"The judgment should include interest from the date of the preference."

*Traders' Nat. Bank v. Campbell*, 14 Wall. 87, 20 L. Ed. 832 is cited in support of the statement. An examination of the opinion in that case, however, discloses that the court did not pass upon the question. We are of the opinion that in view of the authorities interest should be allowed from the time it is shown the transferee wrongfully held the property or money received by him. That is, from the time a demand is made upon him to return the same, and, in case no formal demand is made, then from the time a suit is instituted to recover back the money or property, since the commencement of an action in itself constitutes a demand. This rule seems to be based upon the theory that before demand for the property or money is made the party receiving and holding the same, although it may constitute a preference, is, nevertheless, not holding it wrongfully, and that he is not chargeable with interest until he does so. In this case, therefore, the court permitted respondent to recover excessive interest. It is conceded that the transfer of the property

which constituted a preference was made on the 14th day of February, 1909. The record shows that this action was commenced on the 30th day of March, 1910, or one year, one month, and sixteen days after the transfer was made. The jury found the value of the property which appellant wrongfully received and held to be $735.90. Under the charge of the court the jury in their verdict allowed "interest thereon (said sum) at eight per cent. per annum from the 14th day of February, 1909, to date," to wit, March 29, 1912. The interest at the rate of eight per cent, per annum from February 14, 1909, the date of the transfer, to March 30, 1910, the date of the commencement of this suit, amounts to the sum of $65.37. The judgment is therefore in excess of what it should be in the sum just stated, and hence should be reduced.

There are two other assignments relating to the admission of evidence. An examination of the record discloses that the rulings complained of, even though they were conceded to be technical error, were, nevertheless, of that character which could in no event have prejudiced the appellant in any substantial right.

For the reasons stated, the judgment of the district court dated the 29th day of March, 1912, should be, and it accordingly is, affirmed with the exception of the allowance of the excessive interest as before stated. To that extent the judgment should be, and it accordingly is, modified. The cause is remanded to the district court of Box Elder County with directions to set aside the judgment heretofore entered on the 29th day of March, 1912, and to enter a judgment for the plaintiff as of that date for the amount found by the jury, to wit, the sum of $735.90, with interest on said sum at the rate of eight per cent. per annum from the 30th day of March, 1910, to the 29th day of March, 1912, amounting to $117.60; said judgment to bear interest from said 29th day of March, 1912, at the legal rate until paid. It is further ordered that neither party recover costs in this court.

McCARTY, C. J., and STRAUP, J., concur.